UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. MIGLIO, Executor of the Estate of Jennie Miglio, Deceased, and as Representative of the Estate of Decedents Antoinette Miglio and Frances Miglio, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 10 CV 4235 |
| v. | ) ) | |
| DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, United States of America, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff Michael Miglio, as executor of the Estate of Jennie Miglio, and as representative of the estates of Antoinette Miglio and Frances Miglio, claims that Defendant, the Internal Revenue Service ("IRS"), owes a refund to the estate of Jennie Miglio pursuant to 26 U.S.C. § 2013. (Comal. ¶¶ 16–18.) Presently before us is Defendant's motion to dismiss. Defendant moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. For the following reasons, we grant Defendant's motion.

### I. BACKGROUND

Plaintiff Michael Miglio is the executor of the estate of Jennie Miglio, who died on March 25, 2007. (Comal. ¶ 5.) Jennie Miglio had seven sisters, including Antoinette and Frances Miglio. (*Id.* ¶¶ 5, 10.) Antoinette died on May 2, 1998 and Frances died on January 7, 2000. (*Id.* ¶ 11.) According to the complaint, when each sister died, the surviving sisters received the remainder of the deceased sister's estate, with all of the assets at issue channeled

finally to the last surviving sister, Jennie. (*Id.* ¶ 10.) Both Antoinette's and Frances' estates paid federal estate taxes. (*Id*. ¶ 11.) Jennie's estate paid no federal estate tax in part because of deductions stemming from charitable contributions. 26 U.S.C. § 170 (c)(2)(B). (Comal. ¶ 12, Ex. 10.)

On November 27, 2009, Plaintiff first sought a refund from Defendant pursuant to 26 U.S.C. § 2013, which allows a recent decedent's estate to claim an estate tax credit for property in the estate that was recently subject to the estate tax. (Resp. at 8.) Defendant denied Plaintiff's request for a refund based on this credit on May 11, 2010. (*Id*.) Plaintiff filed this suit on July 8, 2010. (Dkt. No. 1.) Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. (Mot. & Mem.)

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989)). In considering a motion to dismiss under Rule 12(b)(6), we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir.2005); *Thompson v. Illinois Dep't of Prof'l Regul.*, 300 F.3d 750, 753 (7th Cir. 2002).

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint

to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## III.  ANALYSIS

Defendant argues that we lack subject matter jurisdiction over any claim for refund on behalf of Frances' estate, because the administrative claim for refund was not filed within the time allotted for doing so by statute. (Mem. at 4–6.)  As such, Defendant contends that Frances' estate did not properly exhaust the administrative remedies that are a prerequisite to Defendant's waiver of sovereign immunity, and we lack subject matter jurisdiction. With respect to Jennie's estate, Defendant asserts that Jennie's estate is not eligible for a refund based on the credit provided for by 26 U.S.C. § 2013, because the estate paid no federal estate tax. (*Id.* at 6–9.) Defendant is correct in both respects, and the motion to dismiss is granted.

### A.  FAILURE TO TIMELY EXHAUST ADMINISTRATIVE CLAIMS PROCESS

A federal district court does not have jurisdiction over a taxpayer's claim for a federal tax refund "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury] according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). Section 6511(a) of the Internal Revenue Code further provides that a taxpayer must file any administrative claim for a refund within three years from the time that the applicable tax return was filed or two years from the time that the tax was paid, whichever is later. 26 U.S.C. § 6511(a); *C.I.R. v. Lundy*, 516 U.S. 235, 240, 116 S. Ct. 647, 651 (1996).

The claim for refund in this case is based on 26 U.S.C. § 2013. This statutory provision allows a decedent's estate to claim an estate tax credit for "all or a part of the amount of the Federal estate tax paid with respect to the transfer of property . . . to the decedent by or from a person (herein designated as a 'transferor') who died within 10 years before, or within 2 years after, the decedent's death." *Id.* The amount of the credit varies based on percentage multipliers that decline across the ten-year period within which successive deaths would give rise to the credit. *Id.* § (a)(1)–(4). Thus, the closer the successive deaths are together, the higher the credit. The reason for allowing this credit is "to prevent the excessive dilution of testamentary transfers by the estate tax where successive deaths occur within a relatively short period." S. Rep. No. 83-1622, at 122 (1954).

Defendant argues that we lack jurisdiction over any claim for a refund under Section 2013 brought on behalf of Frances' estate, because that estate did not timely file its administrative claim. (Mem. at 4–6.) Because Frances' estate filed its tax return and paid its taxes in September 2000, it had until September 2003 to file a claim for a refund with Defendant. (Comal. Exs. 8 & 9.) 26 U.S.C. § 6511(a). Defendant contends that because no one filed an administrative claim on behalf of Frances' estate until Plaintiff did so in March of 2010, we lack subject matter jurisdiction on any claim relating to Frances' estate. 26 U.S.C. § 7422(a). In response, Plaintiff concedes that we would lack jurisdiction over any claim for a refund brought by Frances' estate. (Resp. at 7.) Plaintiff argues, however, that "the Estate of Jennie Miglio is the claimant for refund in this suit," and Jennie's estate timely filed its administrative claim. (*Id.*)

The confusion about which estate must have filed the administrative claim by what date stems from Plaintiff's mischaracterization of the relief sought and the overlap between the three

estates. The complaint identifies the relief sought as both "[a] refund due the Estate of Frances Miglio from the Estate of Antoinette Miglio" as well as "[a] refund due the Estate of Jennie Miglio from the Estate of Frances Miglio." (Comal. at 5.) With respect to the former, the complaint seems to be seeking relief on behalf of Frances' estate based on a credit tied to the tax paid by Antoinette's estate. Indeed, Plaintiff's calculation of the refund in the complaint affirms this interpretation. In the exhibits attached to the complaint, Plaintiff calculates the credit that is the basis for the refund as 80% of $154,384.00, or $123,427.20. (Comal., Ex. 1.) The figure of $154,384.00 is the total amount of tax paid by Antoinette's estate. (*Id.*) Plaintiff obtained the 80% multiplier from 26 U.S.C. § 2013(a)(1). (*Id.*) That provision states that, in calculating a credit under Section 2013, it is appropriate to use an 80% multiplier when "the transferor predeceased the decedent . . . within the third or fourth years preceding the decedent's death." *Id.* Even though Antoinette died in May 1998 and Frances in January 2000—that is, less than two years apart—Plaintiff appears to be using the multiplier that would have been applicable had Antoinette predeceased Frances in the "third . . . year[] preceding [Frances'] death." *Id.* Thus, at least with respect to the complaint, Plaintiff appears to be claiming a refund in part based on Antoinette as "transferor" and Frances as "decedent."

At first blush, any portion of Plaintiff's claim for refund based on this calculation of the credit would appear to be barred because of Frances' estate's failure to timely file an administrative claim. Plaintiff argues, however, that because *Jennie's* estate, not Frances' estate, is seeking the refund, the claim is not barred based on the failure of *Frances'* estate to timely exhaust the administrative claims process. (Resp. at 7.) But Plaintiff cannot, on behalf of Jennie's estate, overlook the procedural failings of Frances' estate even though the same underlying property is involved. The fact that Plaintiff claims to represent Jennie's estate does

not alter the fact that, according to the complaint, he is in part seeking a refund that was only obtainable, if at all, by Frances' estate. Because Frances' estate failed to timely seek that refund through the administrative claims process, no one can. We therefore hold that, to the extent Plaintiff seeks a refund for Frances' estate, we lack jurisdiction over that claim based on the failure of Frances' estate to timely exhaust the administrative claims process.

In his response, Plaintiff changes the calculation of the portion of the claimed refund tied to the tax paid by Antoinette's estate. (Resp. at 7, 9, 11.) There, Plaintiff says that the relief sought is "a proportionate refund of taxes paid for assets subject to tax in prior estates as follows . . . in the Estate of Antoinette Miglio (applying the 9/10-year percentage: 20% of tax paid, [26 U.S.C.] § 2013(a)(4))." (*Id.* at 9.) Applying the 20% multiplier to the $154,284 in tax paid by Antoinette's estate, Plaintiff arrives at a claimed refund of $30,856. (*Id.* at 11.) Although these figures differ from the complaint—with the end result being a nearly $100,000 difference in the refund claimed—the application of the 20% multiplier makes sense. After all, Jennie's death also occurred within ten years of Antoinette's death, and as such, Jennie's estate, independent of any credit forfeited by Frances' estate, could be entitled to a refund under Section 2013. Thus, to the extent Jennie's estate is seeking a refund based on the fact that both Antoinette and Frances died and were subject to the estate tax within ten years of Jennie's death, Jennie's estate did properly exhaust its administrative claim and we do have jurisdiction. But even with this understanding of the relief Plaintiff seeks, Plaintiff's claim still fails in light of the fact that Jennie's estate paid no federal estate tax.

## B. ELIGIBILITY FOR REFUND BASED ON SECTION 2013 CREDIT

As indicated, Section 2013 allows a decedent's estate to claim an estate tax credit where the decedent received property from a transferor that died within the ten years preceding the

decedent's death.  The credit can also apply to "property received from 2 or more transferors," as is the case here, although such a credit would be "apportioned in accordance with the value of the property transferred to the decedent by each transferor."  26 U.S.C. § 2013(c)(2).  Regardless of whether the credit applies to property received from one or two transferors, however, Section 2013© limits the amount of the credit to the lesser of (1) the amount of the federal estate tax attributable to the transferred property in the transferor's estate, or (2) the amount of the federal estate tax attributable to the transferred property in the present decedent's estate.  26 U.S.C. § 2013(c)(1); 26 C.F.R. §§ 20.2013-1, 20.2013-3.

Here, Jennie's estate did not pay any federal estate tax.  (Comal. ¶ 12.)  On the other hand, Frances' estate paid $135,455.00 in federal estate tax, and Antoinette's estate paid $154,284.00 in federal estate tax.  (*Id.* ¶ 11.)  With respect to both Antoinette's and Frances's estates, all of the estate tax paid by each estate would be "attributable to the transferred property" in each of the respective estates.  26 C.F.R. § 20.2013-1(b)(1).  Either of these amounts, $135,455.00 or $154,284.00, or any combination thereof, is more than the amount of estate tax paid by Jennie's estate, which was zero.  26 C.F.R. § 20.2013-1(b)(2).  Because the least of these amounts sets the upper limit on any credit under Section 2013(a), *see* 26 C.F.R. § 20.2013-1(b), the maximum credit Plaintiff could obtain from this claim for refund is zero.  As such, Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff nevertheless argues that applying the credit to Jennie's estate would increase the amount of Jennie's gross estate, which would in turn increase the distributions to the eight charities that are the residuary beneficiaries of that estate.  (Resp. at 11–12.)  Because these distributions would be tax deductible, the size of Jennie's taxable estate would remain the same, as would the estate's tax liability, which, again, is zero.  (*Id.*)  In Plaintiff's view, the "outcome"

of this process is "the same" with the one change being that "the charities will receive a greater share of the estate assets of the Miglio family, as intended by the decedent." (*Id.* at 12.)

This argument is unsound as a matter of law. The reason is that Plaintiff's initial premise about the credit increasing Jennie's "gross estate" is incorrect. When a credit under Section 6013 applies, it applies as a dollar-for-dollar reduction of an estate's gross estate tax. *See* 26 U.S.C. § 2013(a) ("The tax imposed by section 2001 [the estate tax] shall be *credited* with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property . . . to the decedent by or from a [transferor] who died within 10 years before, or within two years after, the decedent's death.") The gross estate tax is calculated based on the taxable estate. *See* 26 C.F.R. § 20.2013-6 (providing examples of calculation of Section 2013 credit). But any applicable deductions, such as those for charitable contributions, have already been subtracted from the gross estate in calculating the taxable estate. *Id.* In this case, Jennie's gross estate was $2,871,724. (Comal. Ex. 10, at 1, ln. 1.) The estate's allowable deductions totaled $871,724 (*Id.* at ln. 2), yielding a taxable estate of $2,000,000 (*Id.* at ln. 3). The gross estate tax on the $2,000,000 taxable estate was $780,800. (*Id.* at lns. 6, 8.) This figure—$780,800—is the one to which any Section 2013 credit would be applied. But Jennie's estate already successfully claimed a total credit of $780,800,[1] thus resulting in no tax liability. (*Id.* at ln. 11.) In short, even if Jennie's estate could claim this Section 2013 credit, it would have no effect on the beneficiaries of Jennie's estate or on the estate's tax liability.

Plaintiff's failure to see this fact suggests that he is once again conflating what Jennie's estate can seek with what Frances' estate *could* have sought, had it timely filed an administrative

---

[1] Neither the complaint, the exhibits attached thereto, or Plaintiff's response explain what the basis for this credit was. The lines on the Form 706 (Comal., Ex. 10, lns. 9 &11) on which the credit appears are labeled "Maximum unified credit" and "Allowable Unified Credit" respectively.

claim for refund. If Frances' estate had successfully claimed a Section 6013 credit based on the estate tax paid by Antoinette's estate, Frances' estate would have had its estate tax liability reduced. In turn, Jennie, as the beneficiary of Frances' estate, would have received more income from Frances' estate. As a result, Jennie's gross estate would have been larger at the time of Jennie's death. In this way, a Section 6013 credit could have hypothetically increased Jennie's gross estate. But as indicated above, this Section 6013 credit had to have been sought by Frances' estate. Frances' estate failed to file an administrative claim for a refund based on this credit in the time allotted for doing so, and as such, we have no jurisdiction over such a claim. Thus, even though Section 6013 may have once provided an avenue for increasing the amount of property passed between the Miglio sisters, that avenue is no longer available. Plaintiff's argument is erroneous, and Defendant's motion to dismiss is granted.

## CONCLUSION

We lack subject matter jurisdiction over any claim for refund brought on behalf of Frances Miglio's estate, and the claim for refund brought by Jennie Miglio's estate fails to state a claim upon which relief may be granted. We therefore grant Defendant's motion to dismiss.

IT IS SO ORDERED.

_____
Marvin E. Aspen
United States District Judge

Dated: August 2, 2011